IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-669-FL

| | |
|---|---|
| GLORIA UPCHURCH, ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-21, DE-23] pursuant to Fed. R. Civ. P. 12(c). Plaintiff Gloria Upchurch ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

**STATEMENT OF THE CASE**

Claimant protectively filed an application for a period of disability and DIB on December 9, 2010, alleging disability, as amended later, beginning December 4, 2008. (R. 11, 25, 125.) Her claim was denied initially and upon reconsideration. (R. 68, 76.) A hearing before Administrative Law Judge Allan T. O'Sullivan ("the ALJ") was held on April 26, 2012, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified.

(R. 23-44.) On June 7, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 8-22.) On July 26, 2013, the Appeals Council denied Claimant's request for review. (R. 1-6.) Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision denying disability benefits under the Social Security Act, 42 U.S.C. §§ 301 *et seq*., ("Act") is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

# DISABILITY EVALUATION PROCESS

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) the ALJ's finding at step four is inconsistent with the RFC evaluation (Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 7); (2) improper evaluation of medical opinion evidence (Pl.'s Mem. at 8-9); and (3) improper assessment of Claimant's credibility (Pl.'s Mem. at 9-12).

3

# FACTUAL HISTORY

## I.  ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act.  At step one, the ALJ found that Claimant was no longer engaged in substantial gainful employment.  (R. 13.)  Next, the ALJ determined that Claimant suffered from the following severe impairments: asthma, chronic obstructive pulmonary disease ("COPD"), obesity, and anxiety.  (*Id.*)  The ALJ concluded that Claimant suffered from no non-severe impairments.  (*Id.*)  At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 13-14.)  Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in her activities of daily living and social functioning, moderate difficulties in concentration, persistence and pace, and no episodes of decompensation of extended duration.  (R. 14.)

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work subject to certain limitations.  The ALJ stated that "[C]laimant can lift and carry no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, and she can sit, stand, and walk for up to six hours in an 8-hour workday.  (R. 15.)  The ALJ identified the following non-exertional limitations: "[Claimant] can perform simple routine repetitive tasks in a non-production setting.  In addition, [C]laimant must avoid airborne pulmonary irritants."  (*Id.*)  In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible.  (R. 15-18.)  At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a casting

machine operator and electronics worker. (R. 18.) Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined that Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the local and national economies. (R. 18-19.)

**II.    Claimant's Testimony**

At the time of Claimant's administrative hearing, Claimant was fifty-nine years old and unemployed. (R. 25-28.) Claimant is a high school graduate. (R. 144.) Claimant was last employed with AVX Corporation for approximately eight years, where her duties included casting, cleaning, and other assembly line work. (R. 26, 144, 152, 171.) The job involved lifting up to twenty-five pounds and operating heavy machinery. (R. 26.) Claimant left the job in 2005 because, during company cutbacks, she volunteered to be laid off due to her increasing problems with illness. (R. 27.) Claimant's past work experience also includes soldering and assembly work. (R. 26, 153.)

Claimant identified numerous medical conditions in support of her disability claim and her inability to work full-time. These medical conditions include asthma, anxiety, COPD, and osteoarthritis in her knees.

Claimant testified she is unable to work due to symptoms associated with asthma. Claimant stated that her breathing is heavily affected by her asthma, and the problem is exacerbated by other ailments, such as anxiety disorder and allergies. (R. 28.) Claimant uses inhalers multiple times every day and night in order to help control her symptoms. (*Id*.) According to Claimant, the attacks have affected her ability to sleep – (*id*.) – and prevent her from walking even short distances or from ascending more than a small number of stairs at one time (R.

5

29.) In fact, Claimant testified that she never uses the upstairs area of her home because of her breathing problems. (*Id.*)

Claimant also described problems with anxiety. She testified that she experiences panic attacks at least once or twice each week. (R. 30-31.) Claimant testified that her panic attacks cause her to sweat, experience an increased heart rate, cry, and feel like she is having a heart attack. (*Id.*) Claimant said that each attack lasts just a few minutes but feels much longer and that she needs to sit for a few moments to recover. (R. 31.) Claimant began having trouble dealing with stressors, such as bills and her children, a couple of years ago. (R. 31-32.) To combat her problems with anxiety, Claimant began seeing a psychiatrist and stated that her treatment has helped her a lot. (R. 32.) She has also taken medication for the problem, which has reduced the frequency of panic attacks from every day to once or twice a week. (R. 32-33.)

Claimant testified that she has pain in her knees due to osteoarthritis. Claimant stated that if she gets down on the floor, she is unable to stand back up again without assistance. (R. 32.) The knee pain also affects Claimant's ability to stand and to walk distances. (R. 29.) Claimant also stated that she is unable to sit too long because her knees stiffen up and make walking difficult. (R. 35.) To combat the pain in her knees, Claimant is receiving a series of injections, though she noted that eventually the problem will require surgery. (R. 29, 39.)

Claimant also noted some problems with depression. She stated that her depression has affected her ability to sleep and that a couple of times each week she is so depressed that she has to consciously force herself to get out of bed and be active. (R. 33-34.) Claimant said she is more irritable with people, especially her husband. (R. 34.) Claimant has also noted increased problems with migraines recently and she has pain medication to help combat those problems. (*Id.*)

6

Claimant described a number of other functional limitations. Claimant stated that she is able to lift her twenty-pound granddaughter onto her lap but is unable to carry her or walk with her. (R. 35-36.) Claimant estimated that she could lift about eight to ten pounds frequently throughout the day. (R. 36.) She is able to do light cleaning around the house but leaves heavier cleaning to her husband. (*Id.*) Claimant has a lightweight vacuum cleaner, allowing her to perform housework for about ten minutes. (R. 37.) Claimant also leaves major shopping to her husband, but can leave the house to perform small errands. (R. 36-37.) She estimates that she runs an errand once every two or three days and otherwise does not leave the house. (R. 38.) Claimant can dress and bathe herself but cannot sit down in a bathtub because her knee pain would prevent her from getting back up. (*Id.*)

### III.  Vocational Expert's Testimony

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 39-42.) After the VE's testimony regarding Claimant's past work experience (R. 40), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked whether the individual could perform jobs available in both the local and national economies assuming the individual has the physical capacity to perform medium work involving simple, routine and repetitive tasks in a non-production setting with the nonexertional limitation that the individual must avoid airborne pulmonary irritants. (*Id.*) The VE responded that such jobs did exist and cited the following three examples: store laborer (DOT # 922.687-058), food service worker (DOT # 319.677-014), and dining room attendant (DOT # 311.677-018). (R. 40-41.) The ALJ then asked whether the same individual would be able to find work in the local and national economies assuming that the individual had all of the impairments and related limitations described by Claimant in the

7

administrative hearing. (R. 41.) The VE responded that there would be no jobs available that such an individual could perform. (*Id.*)

**DISCUSSION**

I. **Inconsistencies in ALJ's Findings.**

Claimant contends first that the ALJ's RFC assessment and step five findings are inconsistent with the finding that Claimant was incapable of performing her past relevant work. (Pl.'s Mem. at 7.) Where an ALJ's decision contains "substantial internal inconsistencies," remanding the case to the Commissioner for clarification is appropriate. *Stathis v. Sullivan*, 964 F.2d 850, 851-52 (8th Cir. 1992). Where the reviewing court cannot discern the basis for the ALJ's decision, it should remand the case to the agency for "additional investigation or explanation." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). Even where the error is so mundane that it appears to the reviewing court to be a simple misstatement by the ALJ, remand for clarification of the inconsistency is appropriate. *Brown v. Comm'r of Soc. Sec. Admin.*, 245 F. Supp. 2d 1175, 1185 (D. Kan. Feb. 19, 2003).

Here, Claimant alleges that the ALJ's findings at steps four and five are inconsistent. (Pl.'s Mem. at 7.) Prior to step four, the ALJ determined that Claimant was capable of performing medium work with some restrictions. (R. 15.) The ALJ found at step four that Claimant was unable to perform past relevant work as a casting machine operator and electronics worker. (R. 18.) The VE testified that the casting machine operator job normally involved medium exertion, but that as performed by Claimant involved light exertion, and the electronics worker position involved light exertion. (R. 40.) At step five, however, the ALJ found that Claimant was

capable of performing three jobs which involve medium exertion: store laborer, food service worker, and dining room attendant. (R. 19, 40-41.)

Although the ALJ found Claimant capable of performing work at a medium exertional level, that finding is not inconsistent with the ALJ's finding that Claimant is unable to perform the requirements of her past work. In his RFC determination, the ALJ restricted Claimant to non-production paced work. (R. 15.) Claimant's most recent work was as a casting machine operator, which she described as assembly line work and thus required that she work at a production pace. (R. 26.) Claimant likewise described her other previous work experience in soldering as assembly line work. (R. 26-27.) The VE characterized Claimant's past work experience was as a casting machine operator and electronics worker. (R. 40.) Casting-Machine Operator (DOT # 502.682-014) is categorized by The Dictionary of Occupational Titles ("DOT") as a Processing Occupation and is defined as involving constant manipulation of items of non-negligible weight in the production of nonferrous metal alloys. The DOT's definition of Electronics Worker (DOT # 726.687-010) specifically notes that the exertion level of that position is light work because of the production pace and lists a number of assembly-line tasks in the overview of duties. Because the ALJ found Claimant incapable of performing production-paced work, there is no inconsistency in the ALJ's finding that Claimant is unable to perform her prior light-exertion, production-rate work but capable of performing medium work at a non-production pace.

The VE noted three jobs that could be performed by a hypothetical individual with Claimant's RFC, including the restriction to non-production pace work: store laborer, food service worker, and dining room attendant. (R. 40-41.) Importantly, none of these three jobs involves production pace according to the DOT. DOT # 922.687-058 (Store Laborer), 319.677-014 (Food

9

Service Worker, Hospital), 311.677-018 (Dining Room Attendant). Further, the VE testified that these jobs would be available to someone limited to non-production pace work. These findings indicate that the ALJ's opinion contains no inconsistency and adequately explain how the ALJ found Claimant capable of performing medium-exertion work despite finding her incapable of performing her past relevant work, which involved light exertion. *See Radford*, 734 F.3d at 295 (remanding where the basis for the ALJ's decision was unclear). Therefore, Claimant's first assignment of error should be overruled.

## II. Treating Physician's Medical Opinion.

Claimant next argues that the ALJ did not properly consider and evaluate the medical opinion of Dr. Allen Hayes, Claimant's treating pulmonologist. (Pl.'s Mem. at 8-9; R. 261-62.) Generally, a treating physician's opinion should be accorded greater weight than the opinion of a non-treating physician's opinion, but the court is not required to give the testimony controlling weight in all circumstances. *Mastro*, 270 F.3d at 178. Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight only if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id*; *see also* 20 C.F.R. § 404.1527(c)(2). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (quoting *Craig*, 76 F.3d at 590) (internal quotation marks omitted). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. *Id*. The ALJ is also permitted to assign less weight to an opinion delivered in a questionnaire or check-off form because such opinions do not offer adequate explanation of their findings. *Nazelrod v. Astrue*, No. BPG-09-0636, 2010 WL

10

3038093, at *5 (D. Md. Aug 2, 2010) (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993); *O'Leary v. Schweiker*, 710 F.2d 1334, 1341 (8th Cir. 1993)). "Additionally, the ALJ is not bound by a treating physician's opinion regarding whether a claimant is disabled, as that opinion is reserved for the Commissioner." *Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011) (citing 20 C.F.R. § 404.1527(e)(1)). The Commissioner will use medical sources to provide evidence "on the nature and severity of [a claimant's] impairments," but determination of a claimant's residual functional capacity is a matter reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(2).

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must determine the weight to be given the opinion, considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) any specialty or expertise of the treating physician; and (6) any other factors tending to support or contradict the physician's opinion, such as the extent of the physician's understanding of the Social Security disability programs and the physician's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(2)-(6); *see also Parker*, 792 F. Supp. 2d at 894.

Claimant's principal argument here is that the ALJ did not consider all of the indicia of impairment noted in Dr. Hayes' opinion. The ALJ noted that Dr. Hayes diagnosed Claimant with Stage II moderate COPD, that Claimant had not been prescribed additional oxygen, that Claimant reported being able to perform activities of daily living, and that Claimant told Dr. Hayes her asthma was "under good control." (R. 17, 279.) Without explicitly mentioning Dr. Hayes' diagnosis, the ALJ incorporated into the RFC evaluation the only functional limitation identified

11

by Dr. Hayes – that Claimant should avoid exposure to airborne pulmonary irritants. (R. 15, 262.) Claimant contends that the ALJ's failure to note other indicia of impairment, specifically that Claimant suffers from dyspnea on exertion, chronic cough, wheezing, and sputum production, constituted reversible error because those symptoms tended to weigh against the ALJ's conclusion that Claimant was capable of performing medium work. (Pl.'s Mem. at 8; R. 261.)

While the ALJ must consider and analyze all "obviously probative exhibits," there is no requirement that an ALJ recite each piece of evidence in the record ad nauseam to prove that such analysis has occurred. *Craig*, 76 F.3d at 590 (citing *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984)); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining that there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Brittain v. Sullivan*, No. 91-1132, 956 F.2d 1162, at *6 (4th Cir. 1992) ("An ALJ need not comment on all evidence submitted."); *Brewer v. Astrue*, No. 7:07-CV-24-FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) ("[T]he ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered.").

In this case, the ALJ discussed Dr. Hayes' opinion in two separate paragraphs and incorporated a functional limitation identified by him into the RFC assessment, indicating that the ALJ considered the entire piece of evidence. (R. 15, 17); *see Mellon v. Astrue*, No. 4:08-2110-MBS, 2009 WL 2777653, at *13 (D.S.C. Aug 31, 2009) ("[I]t is widely held that ALJs are not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered."). Here, the ALJ's discussion of Dr. Hayes' opinions in two separate

sections of the ALJ's decision indicates that Dr. Hayes' opinions were fully considered and analyzed by the ALJ.

Claimant also argues that Dr. Hayes' finding of dyspnea upon exertion is inconsistent with the ability to perform light or medium work. (Pl.'s Mem. at 8.) That argument is not supported by Dr. Hayes' opinion, however. The sole functional limitation noted by Dr. Hayes was the need to avoid exposure to airborne pulmonary irritants. (R. 262). Further, as Dr. Hayes' opinion is a questionnaire and offers little explanation for his findings, the ALJ was justified in assigning the opinion less weight than a fully explanatory and narrative medical opinion. *Nazelrod*, 2010 WL 3038093, at *5 (D. Md. Aug 2, 2010) (citing *Mason*, 994 F.2d at 1065; *O'Leary*, 710 F.2d at 1341)).

### III. Plaintiff's Credibility

Claimant's final assignment of error is that the ALJ's reasons for assigning Claimant little credibility are not supported by substantial evidence. (Pl.'s Mem. at 9-12.) At step four of the sequential disability analysis, an ALJ must undertake a two-step credibility analysis to determine whether a claimant's subjective complaints of pain are in accord with objective medical evidence. *Craig*, 76 F.3d at 593-96; 20 C.F.R. §§ 404.1529(a)-(c); SSR 96-7p, 1996 WL 374186 at *1, 2 (July 2, 1996). First, the ALJ must determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006); SSR 96-7p, 1996 WL 374186, at *2. If the ALJ finds the existence of such impairments, he must then evaluate the extent to which the claimant's statements concerning the intensity and persistence of his symptoms are supported by the objective medical record. *Hines*, 453 F.3d at 564-65; SSR 96-7P, 1996 WL 374186, at *2. If the ALJ does not find a claimant's statements to be credible, the ALJ must give specific reasons for so finding and those reasons must

13

be supported by the evidence. 20 C.F.R. § 404.1529(c)(4); SSR 96-7P, 1996 WL 374186, at *2; *see also Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (stating that credibility determinations should refer to the evidence forming the basis for the conclusion). Because objective medical evidence may not capture the full extent of a claimant's symptoms, where the objective medical evidence and subjective complaints clash, the ALJ should consider any and all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." SSR 96-7P, 1996 WL 374186, at *3 (complete list of factors included).

Here, the ALJ made the step-one finding that Claimant's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (R. 17.) The ALJ then determined that Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they differed from the RFC assessment. (*Id.*) Claimant testified that she "can't walk, can't stand, can't breathe" (R. 28), that she is able to walk "a little way" but cannot "stand too long" (R. 28-29), could not walk from the hearing office to the parking lot without resting (R. 29), and could only ascend three or four stairs at once (*id.*). The ALJ gave several specific reasons for failing to credit Claimant's testimony in that regard, and Claimant challenges the following three: (1) Claimant is able to lift her twenty-pound grandchild; (2) Claimant can perform light housework and take care of personal needs; and (3) treatment notes from October 2010 indicate that Claimant's COPD was stable. (R. 17, 35-38, 210.) The ALJ supported his decision with other factors as well. For example, the ALJ noted that Claimant had never been prescribed additional oxygen to treat COPD over the course of her treatment regimen. (R. 17, 261-62, 279-80.) The ALJ also noted that Claimant's anxiety has never resulted in psychiatric hospitalization, neurovegetative symptoms, psychotic symptoms, or sustained manic symptoms. (R. 17, 256-59.)

14

Overall, the ALJ's credibility assessment is supported by substantial evidence. Importantly, Dr. Hayes noted no functional limitations other than restricting Claimant's exposure to airborne pulmonary irritants, which the ALJ incorporated into his RFC finding. Any subjective complaints made by Claimant above and beyond Dr. Hayes' assessment are not supported by the medical evidence of record and were properly discounted by the ALJ. (R. 15, 262.) The fact that Claimant could lift her twenty-pound granddaughter and could perform work around the house suggests that her statements of being unable to stand for short durations and unable to walk even short distances without breaks are not fully credible. Claimant also noted that she was able to care for her personal needs and activities of daily living without assistance from others, further suggesting that she was not as limited as she claimed. (R. 17, 37-38.) The fact that Claimant has not been prescribed additional oxygen suggests that Claimant's COPD is not as serious or limiting as she stated. As noted by the ALJ in his RFC assessment, however, such a diagnosis supports the finding that Claimant should not be exposed to airborne pulmonary irritants. (R. 15.) Further, none of the treatment notes from Dr. Hayes suggest any of the functional limitations that Claimant testified to at the administrative hearing. (*See* R. 208-43 (treatment records from Dr. Hayes from January 2007 until October 2010); R. 244-47 (treatment records from Dr. Hayes from December 2010 until January 2011).) The undersigned notes that although the stability of a particular ailment is not indicative of its seriousness or disabling characteristics, *Davisson v. Astrue*, No. I:10-CV-2411, 2011 WL 2461883, at *10 (N.D. Ohio Jun. 17, 2011) ("A person can have a condition that is both 'stable' and disabling at the same time."), in light of the complete set of factors explained by the ALJ to support his credibility assessment, consideration of stability does not constitute reversible error here. Finally, the absence of symptoms exhibited as a result of Claimant's anxiety disorder indicates that she can handle the exertion required by medium,

15

non-production-pace work without experiencing additional functional limitations. Claimant testified that working with a psychiatrist and new medication has helped control the symptoms of her anxiety disorder, indicating that her statements of complete disability are not fully credible. (R. 15, 32-33.) These considerations constitute a complete and proper evaluation of Claimant's credibility and, therefore, the undersigned finds no reversible error.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-21] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-23] be GRANTED and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 12th day of August 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge

16

Case 5:13-cv-00669-FL   Document 25   Filed 08/12/14   Page 16 of 16